IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| MICHAEL FRENCH, | : | |
| | : | Civil No. 11-1009 (RBK/KMW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| TROOPER J.T. SQUIRE-TIBBS | : | |
| | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Michael French's ("Plaintiff") excessive force claims against Defendant New Jersey State Police Trooper J.T. Squire-Tibbs ("Defendant"). Plaintiff alleges that Defendant struck him with a police baton while he was in a holding cell in Moorestown, New Jersey and that such actions violated his federal and state constitutional rights. Currently before the Court is Defendant's motion for summary judgment on all of Plaintiff's claims (Doc. No. 33). For the reasons stated herein, the Court will deny the motion.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

On the night of March 12, 2009, Plaintiff was driving home from the Borgata Casino in Atlantic City, New Jersey to his home in Boothwyn, Pennsylvania when he was stopped by New

---

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the plaintiff. *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

Jersey State Trooper Paul Costa. Def's SUMF ¶¶ 10-11.[2] Detecting the smell of alcohol, Trooper Costa performed a field sobriety test on Plaintiff, which he failed. *Id.* ¶¶ 12-13. Plaintiff was then arrested for Driving While Intoxicated and taken to the New Jersey State Police Barracks in Moorestown, New Jersey. *Id.* ¶¶ 14-15.

Upon arriving at Moorestown Station, Trooper Costa met with Defendant, who set about preparing to administer a blood alcohol test on Plaintiff. In the meantime, Trooper Costa removed Plaintiff's handcuffs and placed him in a small holding cell, which was occupied by one other person, Nan Soo Baik. *Id.* ¶¶ 17-21.

A short time later, the officers heard a commotion coming from the holding cell. Plaintiff and Mr. Baik had started shoving each other. Pl.'s Dep. 48. Mr. Baik did not punch Plaintiff, but rather shoved him a couple of times. *Id.* Plaintiff threw "at least three punches" at Mr. Baik. *Id.* at 49.[3] Within seconds, Plaintiff heard the holding cell door open, and, "out of the corner of [his] eye," he saw what he thought to be a billy club coming at him. *Id.* He was struck and immediately lost consciousness. Next, describing himself as "almost unconscious," he recalled

---

[2] Recognizing that it is bound to resolve all factual disputes in favor of the nonmoving party, the Court emphasizes that any references in this Opinion to Defendant's Statement of Undisputed Material Facts ("SUMF") are limited to those assertions to which Plaintiff has specifically admitted.

[3] The Court notes that Plaintiff's Opposition Brief (Doc. No. 35) contains a paragraph-by-paragraph response to Defendant's SUMF. In that document, Plaintiff denied Defendant's version of the events that transpired in the holding cell, citing in support of its counterstatement Plaintiff's own deposition. Pl.'s Opp. Br. 4. The brief includes the following run-on sentence: "It is denied that Plaintiff threw any punches at [Mr.] Baik, Plaintiff admits to shoving Baik twice in Baik's chest." As support for this proposition, the brief cites to pages 46-48 of Plaintiff's deposition transcript. However, as the court's citation above makes clear, Plaintiff three times admitted to punching Mr. Baik. *See* Pl.'s Dep. 48 ("I do believe I threw a couple punches."; "[Mr. Baik] was standing at first, and then I hit him and he was sitting down . . . ."; "I know I threw at least three punches before I heard the door open.").

Given these circumstances, the Court is at a loss to understand why Plaintiff's Brief would contain at best wholly unsupported and at worst deliberately deceiving representations of material fact. It would appear that Plaintiff's counsel has violated his ethical duties as a lawyer practicing before a New Jersey court. *See* N.J. R.P.C. §§ 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of material fact or law to a tribunal"). As litigation in this matter proceeds, counsel is strongly admonished not to insult the Court's intelligence or, more importantly, the integrity of the federal litigation system in this manner again.

"getting stomped on a little bit." *Id.* at 49, 53.[4] Defendant testified that prior to entering the holding cell, he told Plaintiff to stop hitting Mr. Baik. Def.'s Dep. 15. Plaintiff does not deny this, but simply states that he doesn't remember hearing this order. Pl.'s Dep. 52. Plaintiff admits that after being struck and initially losing consciousness, his recollection of subsequent events was "very, very cloudy." *Id.* at 56. Plaintiff suffered a fractured orbital bone around his left eye, lacerations to the face, and a concussion. Def.'s Mot. for Summary J., Exhs. M and N.

Plaintiff filed suit in this Court on February 23, 2011 (Doc. No. 1). His Complaint contained numerous state and federal causes of action directed at multiple Defendants. In their essence, his claims allege that the named Defendants[5] violated his civil rights under color of state law, in violation of the United States and the New Jersey Constitutions. Am. Compl. Counts I, III (Doc. No. 11). He therefore asserted federal claims under 42 U.S.C. § 1983 and state claims which, although unspecified, appear to arise under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1 *et seq.* On October 15, 2012, Defendant filed the instant Motion for Summary Judgment on all of Plaintiff's Claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the Court

---
[4] It should come as little surprise that Defendant, Trooper Costa, and another officer on the scene, Sergeant Wisenauer, provide a strikingly different account of the events that transpired in the holding cell, especially as it concerns Plaintiff's belligerence towards Mr. Baik as well as towards the officers themselves upon their entering the holding cell. Defendant also avers that he never used his police baton or a billy club to subdue Plaintiff, but does admit to striking Plaintiff twice in the head with his fists. Def.'s Dep. 16. These are disputes of material fact that are to be resolved by a factfinder at trial, rather than by the Court on summary judgment.
[5] Plaintiff's original Complaint named multiple Defendants. As litigation progressed, Plaintiff stipulated to the dismissal of all of Defendants except for Trooper Squire-Tibbs. *See* Doc. Nos.

weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III. DISCUSSION & ANALYSIS

In its response to Defendant's motion, Plaintiff voluntarily withdrew all but two of his claims for relief.[6] Thus, the Court need only address the viability of Plaintiff's § 1983 cause of action for alleged violations of his Fourth Amendment rights, Plaintiff's NJCRA claim, and Plaintiff's prayer for punitive damages.

### A. Section 1983 Excessive Force Claim

42 U.S.C. § 1983 creates civil liability against any person who, acting under color of state law, deprives a citizen of his federal constitutional rights. In cases involving interactions between state law enforcement officials and persons arrested without a warrant but not yet formally charged or arraigned, such persons enjoy rights under the Fourth Amendment to be free from the use of excessive force by those officials.[7] *Hill v. Algor*, 85 F. Supp. 2d 391, 403 (D.N.J. 2000).

In this case, Defendant argues that he enjoys qualified immunity from Plaintiff's excessive force claim. Indeed, qualified immunity protects officers from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[6] Plaintiff's Amended Complaint originally claimed that Defendants had violated his Fourth, Eighth and Fourteenth Amendment Rights. Am. Compl. Count I. It also asserted a claim for municipal liability pursuant to *Monell v. Department of Soc. Serv.*, 436 U.S. 658 (1978). *Id.* Count II. Finally, his New Jersey state law claims appeared to include a civil conspiracy charge. *See id.* Count III. Faced with Defendant's arguments about the legal and factual deficiencies underlying these claims, Plaintiff has voluntarily withdrawn all of them, and they will receive no further attention here. Pl.'s Opp. Br. 10; Pl.'s Sur-Reply Br. 4.

[7] The Court recognizes that there exists some disagreement among the circuits about whether a post-arrest, pre-charge detainee is protected specifically by the Fourth Amendment's proscription against unreasonable searches and seizures or more generally by the Fourteenth Amendment's due process requirement. *Compare Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996) (holding that "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest") *with Wilkins v. May*, 872 F.2d 190, 192 (7th Cir. 1989) (finding that Fourteenth Amendment Due Process standard governs excessive force claims alleged to have occurred during the period between arrest and charge). While the practice among district courts in this circuit is not strictly uniform, this Court has embraced the former approach and sees no reason to change course in the instant matter. *Callaway v. N.J. State Police Troop A*, No. 12-5477, 2013 WL 1431668 (D.N.J. Apr. 9, 2013). It also notes that Defendant acknowledges that Plaintiff, at the time he was in the holding cell, enjoyed the protections of the Fourth Amendment. *See* Def.'s Br. in Support of S.J. 8.

5

reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, "the [C]ourt must consider whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right." *Kopec v. Tate,* 361 F.3d 772, 776 (3d Cir.2004). Then, "if a violation could be made out on a favorable view of the parties' submissions, the [Court must] ask whether the right was clearly established." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* A district court enjoys flexibility in deciding which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2000).

Although Defendant strongly disputes Plaintiff's account of the events that occurred at the Moorestown Trooper Station on March 12, 2009, he nevertheless claims that, even accepting Plaintiff's version of the facts, he is entitled to qualified immunity. Def.'s Br. in Support of S.J. 9-14.

    *i.*    *Violation of Fourth Amendment Right*

A Fourth Amendment excessive force claim involving a police officer and an arrested individual calls for an inquiry as to whether the officer's conduct was "objective[ly] reasonable in light of the facts and circumstances confronting [him]." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (internal quotations omitted). Because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," the Court must be careful not to assess the officer's conduct with the 20/20 vision of hindsight. *See id.* at 396-97. Instead, it

must adopt the perspective of a reasonable officer on the scene, responding to events as they transpired in real time.

As the Third Circuit has explained, courts resolve the objective reasonableness inquiry by considering a number of factors, including:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. [citation omitted]. Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." [citation omitted, alteration in original].

*Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006).

Viewing the facts in the light most favorable to the Plaintiff, a reasonable jury could conclude that Defendant used excessive force by striking Plaintiff with a billy club. While Plaintiff certainly posed a threat to Mr. Baik as he punched him in the holding cell "at least three times," Pl.'s Dep. 49, there is no indication, by Plaintiff's account, that he "actively resist[ed]" the officers when they entered the holding cell to subdue him. *See Couden*, 446 F.3d at 497. Further, because Plaintiff had already been placed under arrest, he presumably had been checked for weapons or any other dangerous items before he was placed in the holding cell; therefore, there was little "possibility that [he] may [have been] armed." *See id.* Finally, it appears undisputed that three officers, including Defendant, entered the holding cell in order to subdue only Plaintiff; thus, there was only one potentially dangerous person with whom the officers had to contend. *See id.* If a factfinder were to accept Plaintiff's version of events, it would be possible to conclude that, under those circumstances, the use of a billy club to the face with sufficient force to break a person's orbital bone would constitute excessive force in violation of

the Fourth Amendment. Thus, the Court must proceed to the second step of the qualified immunity analysis.

   ii.   *Clearly Established Right*

Having determined that a reasonable jury could conclude that Defendant violated Plaintiff's constitutional rights, the Court must determine whether those rights were clearly established at the time Defendants engaged in the allegedly unconstitutional conduct. The inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case[.]" *Saucier,* 533 U.S. at 201. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. The Court must assess whether the right was clearly established at the time the officers acted. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Plaintiff was arrested in 2009. In 2009, it was well-established that striking an arrestee across the face with a billy club without warning while the arrestee was secure in a holding cell and then stomping on his arms a bit while he was lying on the ground semi-conscious was a constitutional violation.[8] Thus, in 2009, Defendant would have known or should have known that such actions were unlawful. Therefore, it is inappropriate for the Court to grant Defendants summary judgment at this juncture based on qualified immunity.

---

[8] Defendant's resort to cases such as *Davis v. Township of Paulsboro*, 421 F. Supp. 2d 835 (D.N.J. 2006) is unavailing because in that case it appears that the police officers' testimony was largely undisputed by Plaintiff. *See id.* at 853-54. Similarly, in *Archer v. Melchionda*, another case cited by Defendant, the Court, in granting the defendant in that case summary judgment on plaintiff's section 1983 excessive force claim, found a number of facts that are distinguishable from the instant case, including flight from arrest, disobedience of officer's commands, and engagement in a physical altercation with the officer. No. 06-2306, 2008 WL 205220 at *7 (D.N.J. Jan. 23, 2008). In this case, however, there is a clear dispute about important facts, such as whether Plaintiff made eye contact with Defendant before he was struck, whether Plaintiff heard the police officer's warnings to stop assaulting Mr. Baik, whether Plaintiff showed signs of aggression towards the police officers before he was struck, and so on. Thus, *Davis* and *Archer* are persuasive only if the Court chooses to accept the Defendant's account of events, rather than Plaintiff's. To do so would be error.

B.   **New Jersey Civil Rights Act Claim**

Count III of Plaintiff's Complaint states a claim for relief under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.* Defendant moves for summary judgment on this claim, arguing that he is entitled to so-called "Good Faith" immunity under the New Jersey Tort Claims Act, N.J.S.A. § 59:3-3. That provision shields a public employee from liability if his complained-of conduct was taken "in good faith in the execution or enforcement of any law." *Id.* The "good faith" standard encompasses two components: either that the public employee's actions were objectively reasonable, or that he behaved with subjective good faith. *Alston v. City of Camden*, 773 A.2d 693, 703 (N.J. 2001). The party seeking immunity need demonstrate only one of these components. *Id.* The "objective reasonableness" inquiry in a New Jersey Tort Claims Act case is identical to the qualified immunity inquiry in section 1983 action. *See Wachendorf v. DeWire*, No. 04-5804, 2006 WL 2385085 at *6 (D.N.J. Aug. 17, 2006) (citing *Wildoner v. Borough of Ramsey*, 744 A.2d 1146, 1153 (N.J. 2000)). Subjective good faith, on the other hand, appears to call for a decidedly fact intensive inquiry:

> The question of subjective good faith . . . must be sensitively treated in light of all the attendant facts and circumstances which give color and meaning to otherwise neutral conduct. The undertaking can rarely succeed except after a presentation of all the evidence through direct and cross-examination and until an opportunity has been afforded to observe the demeanor of the witness.

*Fielder v. Stonack*, 661 A.2d 231, 246 (N.J. 1995) (quoting *Evans v. Elizabeth Police Dept.*, 564 A.2d 462, 463 (N.J. App. Div. 1983)). This description strongly suggests that questions of subjective good faith are to be resolved by the factfinder at trial, and not by the Court on a motion for summary judgment.

In this case, it is undisputed that Defendant was a public employee at the time he struck Plaintiff and that he was engaged in enforcement of the law at the time he struck Plaintiff. Thus, he falls within the ambit of the good faith immunity statute. However, because the Court has already found that Defendant is not entitled to qualified immunity under the standard for section 1983 claims, it must also find that his actions were not "objectively reasonable" under the New Jersey Tort Claims Act standard. *See Wachendorf*, 2006 WL 2385085 at *6. In addition, the Court cannot find at this time that Defendant's conduct was executed in subjective good faith, because that determination must be made by a factfinder at trial. *See Fielder*, 661 A.2d at 246. Thus, the Court will not grant Defendant summary judgment on Plaintiff's New Jersey Civil Rights Act claim.

**C.     Prayer for Punitive Damages**

Finally, Defendant asks the Court to strike Plaintiff's prayer for punitive damages. Def.'s Br. in Support of S.J. 20-21. The Court finds that ruling on this issue at the summary judgment stage would be premature. Instead, it will decide whether to instruct the jury on punitive damages after trial in this matter gets underway. Thus, it will deny Defendant's motion for summary judgment on this issue without prejudice.

**IV.     CONCLUSION**

For the reasons stated above, the Court will deny Defendant's motion for summary judgment. An appropriate order shall issue today.


Dated:   6/26/2013                                                                   /s/ Robert B. Kugler
                                                                                     ROBERT B. KUGLER
                                                                                     United States District Judge